IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

VALLEY FORGE INSURANCE COMPANY,
Plaintiff,
v.

HARTFORD IRON & METAL, INC.
Defendant/Third-Party Plaintiff,

v.

CONTINENTAL INSURANCE COMPANY,
Third Party Defendant.

KERAMIDA, INC.,

Subpoenaed Party.

Cause Number:
1:15-mc-0103-TWP-DML

**VALLEY FORGE INSURANCE COMPANY'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER ON MOTION TO COMPEL NON-PARTY KERAMIDA, INC. TO COMPLY WITH DOCUMENTS SUBPOENA AND ON COLLATERAL MOTIONS DATED JANUARY 11, 2016**

Valley Forge Insurance Company ("Valley Forge"), by counsel, objects to the Magistrate Judge's Order on Motion to Compel Non-Party Keramida, Inc. to comply with Documents Subpoena and on Collateral Motions dated January 11, 2016 (D.E.. 15), and in support states as follows:

The Magistrate's Order was clearly erroneous and contrary to law, and an impractical outcome in resolving the irreconcilable disputes between the parties, as illustrated in denying Valley Forge's motion to compel when she:

1. found the subpoena was unduly burdensome on its face by (incorrectly) relying on the date of production contained in the subpoena, which was not controlling and was overridden by Valley Forge's prayer for relief in its motions to compel;

2. did not follow the Federal Rules of Civil Procedure, and the applicable case law, as to the failures of Hartford Iron and Keramida, Inc. ("Keramida") to timely and properly assert objections and privileges; and

3. did not enforce the Local Rules of the Southern District regarding the filing of documents and the appearances of attorneys.

This is a situation where Valley Forge has properly requested the production of documents in the possession of an interested nonparty, Keramida, who has at least a million dollar financial interest in the present proceedings, who ignored a validly issued subpoena, refused to respond to emails, rejected reasonable efforts to obtain information, and who did not properly appear for or respond to a motion to compel or this action. In addition, the response that was provided by Hartford Iron (not Keramida) made nothing more than blanket claims and objections, and failed to offer any further responses, privilege logs, or explanations.

The Magistrate's Order should be vacated and the Court should enter a new order, or remand the matter back to the magistrate for further proceedings consistent with the law.

## Applicable Law

A district court judge may refer discovery disputes to a magistrate judge for decision. After a decision, parties may file objections to a magistrate judge's order and "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." F.R.C.P. 72(a). This highly deferential standard allows a district

court to modify or set aside a magistrate judge's order if it is clearly erroneous or contrary to law. *See Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

The scope of discovery available by way of a Rule 45 subpoena generally is measured by the same broad relevancy standard applicable to party discovery under Rule 26(b)(1). *See, e.g.*, *Jackson v. Brinker*, 147 F.R.D. 189, 193–94 (S.D. Ind. 1993) (internal citations omitted) ("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules ... if material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of subpoena"); Advisory Committee Notes regarding 1991 amendments to Rule 45 ("non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34"); ALAN WRIGHT ET AL., 9A FEDERAL PRACTICE & PROCEDURE § 2459 n.12 (relevancy standard permitting discovery of any non-privileged matter relevant to a party's claim or defense "has been applied to subpoenas in many cases").

Under Rule 45, courts balance the relevancy of information with other factors recognized by Fed.R.Civ.P. 26, just as they do with discovery directed to parties under Rule 34. Courts have broad powers under Rule 45. Subsection (d)(1) imposes on the court the obligation to police the issuing party's duty to not impose an undue burden. Subsection (d)(2) permits the court, in ruling on a motion to compel when objections to production were made, to order production under terms it deems appropriate that will "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Subsection (d)(3) allows the court, on motion, to modify or quash a subpoena to prevent an undue burden. If, however, the party to whom the subpoena is served fails to respond or provides evasive or incomplete responses, the issuing party can seek to compel discovery. See Fed. R. Civ. P. 37(a). Any person or entity that objects to the

discovery requested bears the burden of showing why the request is improper. *See McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). A district court has broad discretion when deciding whether to compel discovery in such instances. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)).

Valley Forge incorporates by reference the case law it has cited to the court in its underlying motions and memoranda previously filed.

## <u>Argument</u>

**1. The Magistrate's Order was clearly erroneous and contrary to law when it found the subpoena was unduly burdensome on its face by using the original subpoena compliance parameter to evaluate the merit of the motion to compel.**

On page 9 of the Magistrate's Order (D.E 15) it states:

> Here the court finds that the subpoena should not be enforced, and Valley Forge's motion to compel must be denied, because the subpoena so clearly imposed an undue burden and expense by demanding such a wide range of documents on only 72 hours' notice, including categories of documents going back 10 years and categories of documents Valley Forge could have asked its adversary to provide.

The Magistrate indicated that she chose to use the October 13, 2015 subpoena's original time constraint ("within less than 72 hours" D.E.15, page 6), to conclude that the subpoena was unduly burdensome on its face and therefore the motion should be denied. The Magistrate stated she assessed the subpoena in the motion to compel using this timeframe because Valley Forge had not proposed any modification to the scope of its subpoena or timeframe. (D.E. 15, page 6, Footnote 3).

The premise on which the Magistrate's conclusion is made is factually incorrect. It ignores the ordinary process of motions and orders to compel discovery, and the express powers conveyed to courts to control the discovery process when called upon by a party do so, or when it chooses

to do so on its own. Factually, the subpoena did not actually have a time constraint on providing the documents, as some discovery requests do, but rather called for the documents to be provided at a specific date and time: October 16, 2015 at 10:00 a.m. The short time was due to the impending hearing, but the discovery requested was pertinent to more than just the upcoming hearing. Because the date and time called for in the original subpoena had passed by the time Valley Forge filed its first motion to compel, Valley Forge clearly was not seeking strict compliance with the subpoena, as that was (and is) temporally impossible.

In fact, Valley Forge did not seek to compel the production of documents until it filed its first motion to compel in the Northern District of Indiana two weeks later, on November 3, 2015, (doc. 260 in 1:14-cv-00006-RLM-SLC) once it was clear that Hartford Iron did not intend to provide a log or any additional response, and that Keramida and its lawyer were not going to respond in any way. Fourteen days was ample time for Keramida to do the work necessary to assemble the documents requested, or at the very least to provide some response to the subpoena, but none was forthcoming. Keramida never responded to Valley Forge's emails, the subpoena, or the November 3, 2015 motion.

In this motion to compel, filed and commenced on November 24, 2015, more than 30 days after the initial service of the subpoena (and well after the October 16, 2015 production "deadline"), Valley Forge did not request that the Court order Keramida to produce the documents in 72 hours; rather, Valley Forge merely asked the Court for an order compelling the production of documents. The prayer for relief was nonspecific, seeking only an order compelling production and such other and further relief as the Court deems just and equitable. Valley Forge included such a prayer because it understands that the Court has the power and responsibility to make such time

constraints in orders under the Federal Rules as it deems appropriate. In D.E. 1 and 3, Valley Forge made the following prayer for relief:

> WHEREFORE, Valley Forge Insurance Company respectfully requests that this Court issue an order directing Keramida, Inc. to produce all documents responsive to the subpoena at issue to Valley Forge, and providing Valley Forge with such other and further relief as this Court deems just and equitable.

In D.E. 10, Valley Forge made the following prayer for relief requesting production within 14 days:

> WHEREFORE, Valley Forge Insurance Company respectfully requests that this Court enter an order directing Keramida to produce all documents responsive to the subpoena at issue to Valley Forge without limitation within 14 days of its order, and deny Hartford Iron's cross-motion for sanctions, and providing Valley Forge's attorney fees and costs, and with such other and further relief as the rules provide and this Court deems just and appropriate.

Also absent from the Magistrate's analysis was any consideration for the ample efforts made by Valley Forge before the motions to compel were filed. Valley Forge attempted to address the deficiencies in Keramida's and Hartford Iron's responses, or lack thereof, and secure from them the requested documents, the identity of Keramida's lawyer, and a privilege log. D.E. 1-2, 1-3, and 1-4 demonstrate the efforts that Valley Forge undertook to communicate with Keramida, and Hartford Iron, and to properly pursue the discovery requested without seeking the Court's intervention. Valley Forge provided a number of opportunities for compliance and the preservation of objections and privileges, but Keramida and Hartford Iron flatly ignored or rebuffed these efforts, at which point Valley Forge was left with no other option than to seek assistance from the Court. The Magistrate's failure to account for Valley Forge's efforts in her analysis merits reversal of the January 11, 2016 Order.

The premise by the Magistrate in footnote 2 on page 6 of the Order (D.E. 15) regarding timeframe for response is simply incorrect. The conclusion made based on that false premise is equally erroneous. The Magistrate made a mistake, and the order should be vacated.

Addressing the process, Valley Forge filed a motion to compel after Keramida did not respond to the subpoena or to its later efforts to obtain responses and logs. Neither Keramida nor its attorney ever responded to the subpoena, to email, to the first motion to compel, or even this motion until after the time to respond had passed. In fact, Keramida's attorney did not actually appear of record until *after* the Magistrate's Order was entered.

Motions such as this are filed in courts to compel documents to be produced when the time set for response has passed and either no response, or an inadequate one, has been made. By the very nature of the post-noncompliance process, the original period for response is really not at issue. Trial courts, in addressing motions to compel of all types, have the power and duty to set a response time to whatever they deem appropriate. It is the ordinary course of business for courts judges, and magistrates all over Indiana to issue orders compelling production with a new timetable regardless of what the first timetable was. It is not unusual for Indiana courts to also give parties and nonparties second chances, and give time not only to produce documents, but also to submit new or improved objections after poor ones are advanced, or even order privilege logs where none were timely offered in the first place. In this case, the Magistrate chose not to do any of those things, and instead nullified the entire process. That choice was a mistake that was clearly erroneous and contrary to law. While courts may quash unreasonably short periods for compliance with subpoenas for production when objections or motions to quash are filed prior to the compliance date, that was not the case here. There was no motion to quash by Keramida. There was no objection from Keramida to Valley Forge or a proposal of alternate terms by Keramida or

its lawyer, Mr. Strahl. Keramida never personally responded to anything until its one page filing (D.E. 11), and its lawyer first appeared sometime after that. The original compliance period is not relevant at all to the present motion to compel the production of documents. The Magistrate's Order should be reversed.

The Magistrate's finding of undue burden also appears to be based, in part, on a misperception regarding the volume of documents requested. While it seems that this finding was contextualized to what can be accomplished in 72 hours rather than some longer time, if the Court is under the impression that there were too many documents expected or that the expense of retrieval in terms of time or effort was too great, the Court was also mistaken in that regard. It is clear from the context of this lawsuit and the matters concerning just this one slice of the case involving the proposed retention basin, millions of dollars are at issue and not just between the parties, but non-parties such as Keramida as well. Keramida is making a demand for a down payment on just a portion of this project from Valley Forge of several hundred thousand dollars. The requests made by Valley Forge on Keramida are clearly relevant, and go to the precise issues raised in this lawsuit by all parties. Moreover, while Keramida may be a nonparty to this lawsuit, it nonetheless may have a big stake in its outcome. It is Keramida who wants several hundred thousand dollars from Valley Forge as a down payment and it is Keramida who will expect to be paid more than a million dollars by Valley Forge just for a portion of the work it expects to get related to the Hartford Iron site. So while this Court should protect disinterested nonparties from undue burdens, Keramida is most certainly an interested nonparty to the tune of more than a million dollars. It would seem with that kind of stake that Keramida could spare the reasonable time and expense necessary to produce documents relating to its activities, its payment terms, and its history and relationships with the parties.

It is difficult to understand why the Magistrate deviated so far from ordinary practice in using the original subpoena compliance date to find the motion to compel an undue burden on its face, when it was well within the Magistrate's authority and discretion to pick a new response period for the order. When one examines the context of the order and the manner in which Hartford Iron and Keramida responded, however, it appears that the Magistrate created a straw man that she could easily knock down, serving as the basis for the denial of the motion to compel, in order to relieve Hartford Iron and Keramida from being held to account for their absolute failure to follow the court rules and applicable case law.

While the Magistrate did not express this overtly, examining the order provides some hints that this may have been the case. On page 9 of the Order (D.E. 15), before the Magistrate made the finding of undue burden, she led in with the following statement:

> Moreover, even if Keramida had waived objections, the court is not prevented from corralling unreasonable discovery. The court will make a merits based decision whether Keramida should be compelled to comply with the subpoena.

After the finding of undue burden, the Magistrate followed with another statement:

> The court also rejects Valley Forge's contention that any privilege attaching to any of the subpoenaed documents was waived because they were not individually logged. The court's decision denying Valley Forge's motion to compel excuses any obligation Keramida (or Hartford Iron) had to create a privilege log with respect to the Keramida subpoena.

The Magistrate did not cite any case that would support such a position, but in taking the approach she did and then making those conclusions, she sidestepped dealing with the overwhelming authority that supports the wavier arguments made by Valley Forge.

If that was the underlying objective, it would have been more helpful to the parties and nonparties to simply reset the clock rather than deny the motion. There is no question that the sought after documents are relevant, and that the applicable proportionality analysis supports this

discovery. This subpoena calls for some very specific and common information to a company such as Keramida. The subpoena is the functional equivalent of a nonparty request for production to a treating physician in a personal injury case, and normal disclosure for expert testimony, as well as normal discovery in a contract dispute. Where there is some question about the propriety of the conduct of actors such as what has been alleged in this case discrete discovery from each actor is not only prudent, it is essential. Even if there were no questions about the actors, this discovery was directed at the original possessor of the requested documents. This is the most efficient means of discovery.

      The Magistrate's Order suggests that the documents sought from Keramida are within the possession of Hartford Iron. A reading of the subpoena and rider demonstrates on their face that is untrue. There are 17 requests. However when broken down into subject matter, they are related to: 1) the relationship between Hartford Iron and Keramida; 2) the work done and proposed to be done by Keramida at the Hartford Iron site; 3) arrangements, agreements and payments made to Keramida for this project; 4)other instances of arrangements by Keramida with the relevant parties in this case; and 5)similar arrangements as those demanded in this case with other entities. While there may be a few documents that would rest in Hartford Iron's possession as well, i.e. their side of conversations and communications, it is self-evident that Hartford Iron would not be in possession of Keramida's files, Keramida's records, Keramida's email, Keramida's correspondence files, and Keramida's accounting information. Valley Forge is entitled to get information from the most reliable source possible, the original possessor.

      Keramida holds itself out to be a one of the industry's top professionals and nationally recognized experts with cutting edge technology (http://www.keramida.com/). The documents Valley Forge seeks should be within a few keystrokes of such a business. Any ordinary conflict of

interest system, email system, document storage system, word processing system and accounting system should yield the information requested by Valley Forge without much trouble. Valley Forge earnestly believes it is entitled to these documents, and will continue to pursue them. The parties do not agree. Hartford Iron does not want Valley Forge to have these documents, and has demonstrated its willingness to go beyond the rules to prevent it.

**2. The Magistrate's Order was clearly erroneous and contrary to law when it did not follow the Federal Rules of Civil Procedure and applicable case law as to the failures of Hartford Iron and Keramida, Inc. to timely and properly follow the rules in asserting their respective objections.**

Valley Forge briefed the Magistrate on the applicable case law and trial rules applicable to Harford Iron and Keramida making the objections they were responsible for, respectively. Valley Forge's briefing also advised the Court of the burdens on Hartford Iron and Keramida, as the objecting parties, to preserve their objections and claims of privilege. As noted, Valley Forge requested logs and objections and explanations for Keramida's refusal to comply before filing the motions to compel. No privilege log was ever provided by Hartford Iron or Keramida. Hartford Iron did respond to the subpoena and log some objections, and it is certainly entitled to do so, but its response was fatally deficient as to its own objections and improper as to Keramida's objections. Courts have been consistent for years that in order to preserve claims of privilege, a privilege log must be provided. Not only did Hartford iron refuse to provide such a log in its initial response, it refused to do so when asked later by Valley Forge, and has failed to provide one in any of these later proceedings. This should not have been allowed by the Magistrate.

Valley Forge also briefed the Court on the court rules and case law demonstrating that who makes a specific objection is as important as the basis of the objection, and who has the burden of explaining and supporting the basis for the objection. The Magistrate disregarded the applicable law and improperly found that "whether or not counsel had a right to raise objections for Keramida

or whether Keramida's objections were expressed by the right person, there is no doubt the objections were communicated to Valley Forge." (D.E.15, page 8). The "court finds Valley Forge's waiver argument unreasonably elevates form over substance under the circumstance of this case. It is rejected." (D.E.15, page 9).

The problem with the Magistrate's position on who raises what objection and the supporting substance that must be advanced by the objecting party is that it is contrary to law. In fact, it does matter who raises what objection, and what facts are advanced in support of the objection. It is also again notable that Valley Forge requested Keramida and Hartford Iron to comply with the law on these issues. They never did. The Magistrate should not have permitted Keramida and Hartford Iron to ignore the subpoena, ignore the law, and ignore the requests and inquiries of counsel, as they did in this matter. The law requires them to do more than they did and in a manner different than they chose. The Magistrate should not have rewarded them for their failure to follow or respect the law and the subpoena power of the Court. The opposition did not address the law and the Magistrate did not offer any law to support the blanket dismissal of Valley Forge's arguments. The Magistrate's Order was in error and should be reversed.

**3. The Magistrate's Order was clearly erroneous and contrary to law when it did not enforce the Local Rules of the Southern District of Indiana regarding the filing of documents, and the appearances of attorneys.**

The Magistrate also excused the requirements of the local rules as to parties and their lawyers. This is clearly contrary to the local rules, which are not optional. The local rules have been promulgated by the Court to be followed, not disregarded. If a lawyer wants to appear before this Court and work with the attorneys and judges in this Court, it would seem at a minimum they should be expected to follow the Court's standing rules.

Neither Mr. Shere nor Mr. Strahl are beginners, and these are not mistakes of inexperience. These are conscious litigation decisions. The violations of LR 5-2, 5-4, and 5-7 should not have

been excused or trivialized by the Magistrate. These are not issues of form over substance or hyper-technical complaints. They are the fundamental requirements for accountability to the court and to other attorneys. The Magistrate's Order effectively allowed Keramida to appear and oppose the motion to compel without appearing in person or by counsel, but rather doing so by way of Hartford Iron as proxy. Hartford Iron is not a lawyer, and Mark Shere never appeared for Keramida. The Magistrate, however, effectively allowed him to represent Keramida without appearing for it, and to make representations on behalf of Mr. Strahl without the appropriate authority to do so, and then allowed Keramida to make a late filing by Mr. Strahl before Mr. Strahl even appeared. This is not just irregular; it is improper and clearly contrary to the Court's rules. This discovery, the very discovery that the Magistrate denied, is in part specifically directed at uncovering the unusual and unclear relationship between Keramida, Hartford Iron, Mr. Shere, and Mr. Strahl. The improprieties demonstrated by these rule violations and Mr. Shere's past issues documented in court opinions support not only compelling this discovery, but prohibiting the very rule violations that the Magistrate allowed. The Magistrate's Order was contrary to law when it allowed the improper filings and should be reversed.

**Conclusion**

The Magistrate's Order was clearly erroneous, contrary to law, and an impractical solution to resolving the irreconcilable disputes between the parties.

Hartford Iron and Keramida chose not follow the law, the discovery rules, or the local rules. Hartford Iron's claims of privilege were not properly preserved without a proper privilege log. Hartford Iron's other objections were not theirs to make and they were not properly supported. Keramida's objections were not timely, not supported by facts, and not properly raised by Keramida or a lawyer properly appearing on its behalf. These choices were repeated

actions and strategic decisions by Hartford Iron and Keramida, not single isolated events of inadvertence.

In order to excuse these clear failures by them to simply follow the law, the Magistrate set up a straw man and knocked it down. The Magistrate did not resolve the dispute by denying the motion to compel in manner in which it did, but rather rewarded Hartford Iron's and Keramida's choice to disregard well-established rules of court and case law, and set the stage for a new round of discovery to the nonparty with a new time period to cure the Magistrate's principal basis for denial.

The Magistrate should have found that Keramida and Hartford Iron did not follow the rules and did not meet their burdens in opposing the subpoena, and should have ordered the production of the documents within some reasonable time. Rather than rule as she did, the Magistrate at a minimum should have done one or more of the following, all of which were within the Magistrate's power and discretion, and which would have helped the parties move toward resolving the dispute:

1. Refused Mark Shere's filings on behalf of Keramida, Inc. and for attorney Dan Strahl as improper;

2. Compelled Keramida to file its own objections and responses through its own attorney, so that that those arguments could be presented in an accountable manner and addressed substantively by Valley Forge;

3. Ordered a proper privilege log to be submitted by Hartford Iron and/or Keramida;

4. Ordered production on those items requested that were obviously appropriate;

5. Ordered the above items to be done within a reasonable and ordinary timeframe, such as 14, 21, or 28 days.

This Court should sustain the objections to the Magistrate's Order, and compel the production within a reasonable time, or issue its own order along the lines discussed herein, or vacate the order and remand back to the Magistrate for a similar order and proceeding consistent with the same.

Dated: Respectfully submitted,

*/s/ Philip E. Kalamaros*__________
Philip E. Kalamaros
HUNT SUEDHOFF KALAMAROS, LLP
301 State Street, 2nd Floor
St. Joseph, MI 49085
Telephone: 269.983.4405
Facsimile: 269.983.5645
pkalamaros@hsk-law.com
*Attorney for Valley Forge Insurance Co.*

Jan M. Michaels
Steven Schulwolf
Thomas D. Ferguson
MICHAELS, SCHULWOLF & SALERNO, P.C.
300 South Wacker Drive, Ste. 1650
Chicago, Illinois 60606
Telephone: 312.428.4734
Facsimile: 312.575.8679
sschulwolf@msslawpc.com
jmichaels@msslawpc.com
tferguson@msslawpc.com
*Attorneys for Valley Forge Insurance Co.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 25, 2016 a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Philip E. Kalamaros*